STATE OF VERMONT

ENVIRONMENTAL COURT

|                          |     |                       |
|--------------------------|-----|-----------------------|
| In re: Tampas, et al.    | }   | Docket No. 45-3-08 Vtec |

Decision and Order on Cross-Motions for Summary Judgment

Appellant-Applicants (Appellants) John Tampas, Richard Hee, Donald Thomas, Richard Bertolino, Chandler Nims, Steve Barclay, and Thomas Brennan appealed from a decision of the Development Review Board (DRB) of the Town of Colchester, denying site plan approval to an as-built stone-and-rip-rap berm on the shore of Lake Champlain. Appellant-Applicants are represented by Thomas F. Heilmann, Esq.; the Town of Colchester is represented by Thomas G. Walsh, Esq.

The parties have moved for summary judgment. At the request of the parties, a site visit was taken by Judge Wright together with both attorneys, to provide an illustration of and context for the materials and photographs submitted in connection with the motions for summary judgment. The following facts are undisputed unless otherwise noted.

Appellants each own property with frontage on Lake Champlain, on the southwesterly shore of Colchester Point, in the Laurel Hill North development. The developer was obligated by the 1969 Planning Commission's approval of the subdivision (carried out in the properties' covenants obligating Appellants), to employ "a suitable means of shore protection to insure that each lot has a useable depth of 150 feet during all water conditions." Planning Commission Minutes, May 5, 1969, Appellants' Attach. 1. In approximately 1975, a 700-foot-long concrete seawall was

1

constructed on Appellants' properties (the 1975 Concrete Seawall) to accomplish the required shoreline protection.

The 1975 Concrete Seawall is approximately ten inches in thickness, and stands with the top of the wall at elevation 104.5 feet above sea level, approximately nine feet in height above the original lake bed elevation of 95.5 feet above sea level. The ground level of Appellants' properties is close to the elevation of the top of the wall; many of those properties are fenced close to the top of the wall, due to the drop off.

The 1975 Concrete Seawall was built onto an approximately five-foot-wide concrete footing, which is approximately one foot thick. Approximately a foot-and-a-half of the footing extends lakeward of the lake side face of the wall. As originally designed, a three-and-a-half foot mound of sand was to be placed in front (on the lake side) of the base of the 1975 Concrete Seawall, entirely covering the footing and a portion of the base. As of 2007, none of this material remained in place, due to erosion by the action of the lake.

Over time, and particularly as a result of high winter and spring water levels in Lake Champlain in the years just prior to 2007, the sand beach or lake floor on the lake side face of the 1975 Concrete Seawall had eroded, increasing the likelihood of damage to or partial collapse of the 1975 Concrete Seawall. A portion of the 1975 Concrete Seawall had begun to bow outwards.

Appellants applied for and, on October 10, 2007, received approval[1] from the DRB for the placement of a stone block and rip-rap berm (the 2007 Berm) on the lakeside face of the 1975 Concrete Seawall, to reinforce and protect the 1975 Concrete Seawall. Such a berm is designed to reduce erosion by dissipating the energy of the water and wave action, thereby protecting the 1975 Concrete Seawall.

---

[1] The application was filed for and approved in two segments, one in front of three properties and the other in front of four properties. This decision will discuss the berm as a single 700-foot-long unit.

As approved (the approved design), the 2007 Berm was designed to consist of large[2] quarry blocks of stone set at a shallow 21° slope, from a point eight feet into the lake beyond the base of the concrete footing, extending up to a height of 3½ feet (elevation 99 feet above sea level) at the wall, infilled with smaller shot rock or rip-rap material behind the quarry blocks (that is, in the area formed by the underneath surface of the quarry blocks, the lake bed, and the 1975 Concrete Seawall). The approved design would have resulted in a berm with an essentially triangular cross-section. See Ex. C to Appellants' Attach. 2.

There are only limited periods during the year when the lake level is low enough to allow construction of projects such as this one. During construction of the project during such a period in October of 2007, the engineer and contractor made field changes to the project. The parties dispute facts as to the necessity for the field changes to be completed without prior notice to the DRB and without prior application under § 8.05(I)(1)(b); these disputed facts may not be material, as discussed below.

As redesigned and constructed in the field (the as-built design), the berm remained 3½ feet in height (elevation 99 feet above sea level) at the wall, and with the lowest quarry block being set in the lake bed also at a point eight feet into the lake beyond the base of the concrete footing. However, in the as-built design, the quarry blocks were set at a steeper angle, resulting in a slope of about 70° and leaving an area about five feet in width to be filled in with the shot rock rip-rap material. The as-built design resulted in a berm that is essentially trapezoidal in cross section, with an irregular horizontal surface of one-foot-diameter shot rock. See Ex. P to Appellants' Attach. 2.

After the project's certificate of compliance was denied due to the discrepancy between the approved design and the as-built design, Appellant-Applicants applied for

---

[2] Two feet by two feet by four feet in size.

approval of the as-built design on or about October 22, 2007 (the date of the as-built engineering drawing).[3]  At some time during the proceedings, the DRB requested that an alternative proposal be developed with a sloped rather than a horizontal upper surface.  That alternative design, dated December 17, 2007, adds a sloped surface of quarry blocks at a slope of 30°, resulting in a berm angled up towards the lake side face, with a maximum height of approximately 5.7 feet above the lake bed.  Town's Ex. 6.  Material facts are in dispute, or at least have not been provided to the Court, as to whether Appellant-Applicants also applied, formally or informally, for this alternative proposal, and therefore whether it is before the Court in this proceeding.  The minutes[4] of the January 23, 2008 DRB hearing state that Appellant-Applicants' engineer "outlined the work that would be done if the Board approves the revised drawings that have been submitted that will provide a sloping surface that can't serve as a landing of any type." As neither the application nor the DRB's written decision has been provided, the Court cannot determine whether both the as-built design and the alternative design are before the Court for decision.

Discussion

It is important to keep in mind that all that is before the Court in the present application and appeal is whether the as-built design (and possibly also the alternative design, see preceding paragraph) should be approved.  No Notice of Violation appeal or enforcement action is before the Court in this proceeding that would relate to any

---

[3] The parties have not provided the application, only the engineering drawing. Material facts may therefore be in dispute, or at least have not been provided, as to whether the application was made under § 8.05(I)(2)(c).  The parties also have not provided § 8.05(I) of the Regulations, although it is referred to in the Town's memorandum.  Any sections of the Regulations cited in the memoranda but not provided to the Court are available at http://town.colchester.vt.us/pz/Regs/Zoning/zregs.htm.

[4] Appellants' Motion to Strike this exhibit (Town's Ex. 7) is denied; the Court has not relied on this exhibit for any purpose at issue in the Motion to Strike.

discrepancy between the approved plan and the as-built plan. That is, any enforcement for failure to build according to the approved plan, or for the delay between the field changes and the application for as-built approval, is independent of whether approval is granted or denied for an as-built design. See, e.g., Town of Calais v. Noordsij, No. 142-6-06 Vtec (Vt. Envtl. Ct. Aug. 29, 2008) (Wright, J.). Rather, the Regulations require the application for approval of the as-built design to be treated "in accordance with the procedures required for initial applications," under § 8.05(I)(2)(c), as an application was not filed under § 8.05(I)(1)(b) during the field changes.

Therefore in this de novo proceeding the Court must apply the standards applicable to seawalls and similar structures found in § 703(F)(4), as if Appellant-Applicants were applying for approval of the as-built design[5] in the first place, without reference to its differences from the originally-approved design.

### § 703(F)(4)(a)

The as-built design consists of natural materials and limits the extent of exposed concrete of the existing 1975 Concrete Seawall. By adding a 3½-foot-high terraced section of berm in front of the existing nine-foot-high 1975 Concrete Seawall, it brings the seawall-and-berm assemblage into compliance with the terracing requirement of subsection (a). The as-built design therefore complies with subsection (a).

### § 703(F)(4)(b)

The requirement that Appellant-Applicants must "prove the required need" for the as-built design relates to the need for the as-built design as a reinforcing structure for the 1975 Concrete Seawall. Nothing in this section (or in § 8.05(I)(2)(c)) requires or

___

[5] The remainder of this decision will only refer to the as-built design; however, if the alternative design is also being applied for in this application, the decision applies equally to the alternative design.

5

even authorizes a comparison between the as-built design and the previously approved design, and nothing in this subsection (or in § 8.05(I)(2)(c)) requires that the proposed structure be the minimum necessary to meet that 'required need.'

While material facts are not in dispute as to the need for a reinforcing and protective berm to protect the 1975 Concrete Seawall and prevent it from collapsing, material facts are in dispute, and remain for trial, as to the need for the as-built design as that reinforcing structure.

### § 703(F)(4)(c)

Although this subsection by its terms only applies to seawalls, the as-built design is meant to reinforce and essentially to become part of the 1975 Concrete Seawall; that is, Appellant-Applicants have constructed it because the 1975 Concrete Seawall would collapse without it. The resulting seawall-and-berm assemblage therefore must also comply with subsection (c).

As with regard to subsection (b), material facts are in dispute, and remain for trial, as to the extent to which it would have been "structurally feasible" for the reinforcing berm to be located any closer to the face of the seawall, or to minimize backfill to any greater degree than as done in the as-built design.

### Landing

Nothing in the Regulations precludes the top of a seawall or similar structure from being flat; the excerpts from the Regulations provided to the Court in this matter only regulate "landings" associated with stairways. No stairway provides access to the top of the berm, approximately five feet below the top of the seawall. Indeed, the requirement in § 703(F)(4)(a) that the structure be "constructed in a 'terraced' or 'stair' manner with no individual section exceeding 5 feet in height" suggests that the top of such a reinforcing berm is allowed or even expected to be flat.

6

The Town argues that Condition 11 of the original approval stated that no new "decking, landing, stairs or lighting" was approved in connection with the approved design. If this were an enforcement case relating to failure to construct the berm according to the requirements of the original approval, it would be necessary to address whether the top of the berm constitutes a "landing" within the meaning of that condition. However, nothing in the present application for as-built approval requires that determination; the as-built application must be addressed on its own merits.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that both motions for summary judgment are denied, as material facts are in dispute. A telephone conference has been scheduled (see enclosed notice) to discuss mediation and the setting of the remainder of this matter for trial.

Done at Berlin, Vermont, this 13th day of February, 2009.

_____
Merideth Wright
Environmental Judge